**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

JONNY ALEXANDER REYES MARTINEZ                          PLAINTIFF

v.                                    CIVIL ACTION NO. 4:19-CV-38-JHM

JASON WOOSLEY                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendant

Jason Woosley (DN 24).  For the following reasons, the Court will grant Defendant's motion.

## I. STATEMENT OF THE CASE

Plaintiff Jonny Alexander Reyes Martinez was a pretrial detainee at the Grayson County

Detention Center (GCDC) at the time pertinent to this action.  He sued Defendant GCDC Jailer

Woosley in his individual and official capacities.  He alleged that on March 15, 2018, his right

shoulder was injured while in a van driven by a corrections officer (CO).  Plaintiff stated that,

once back at GCDC, he requested medicine for his pain from the medical unit.  He stated, "They

put me on a pill to ease my pain."  He further stated that after a few days they "gave me a pill

that harm me," explaining that the morning after taking the new pill "my entire body started

itching.  The CO took me to medical and from there I was taking to the hospital.  At the hospital,

the doctor told me I was giv[en] a Tylenol and that [was] the cause of my symptoms."  Plaintiff

further stated that he was released from the hospital and taken back to GCDC but was rushed

back to the hospital because his symptoms worsened.  He alleged that, at the request of the

doctor, he was transferred from that hospital to a hospital in Louisville.  He stated that he was

told that on the way to the hospital he nearly suffered cardiac arrest; that he was in a coma for

two hours; and that he was hospitalized for six days.

Plaintiff alleged that GCDC was aware that he is allergic to Tylenol "but yet gave me the pill because they didn't have what I was normally tak[ing]."

On initial review, the Court allowed the claim against Defendant in his official capacity to continue. The Court provided an opportunity for Plaintiff to amend the complaint to name the person(s) responsible for giving him medication to which he was allergic. In response, Plaintiff filed an amended complaint to add "medical staff." Because "medical staff" is not a legal entity capable of being sued, the Court dismissed the claims in the amendment. *See* DN 8.

## I. <u>PRELIMINARY MATTERS</u>

Before the Court turns to the merits of the summary-judgment motion, the Court will address two requests contained within Plaintiff's response (DN 26) to the summary-judgment motion. Plaintiff's response asks to amend his complaint to add "Doe/unknown defendants" and for appointment of counsel. He states that he has attempted to obtain the names of individuals responsible for giving him the wrong medicine "only to be ignored or totally denied access." However, as set forth below, the Court finds that Defendant is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies, and the Court does not reach Defendant's argument as to the merits of the deliberate-indifference claim. Thus, Plaintiff's request to amend (DN 26) is **DENIED**. For the same reason, Plaintiff's request for appointment of counsel (DN 26) is **DENIED**.

## II. <u>ANALYSIS</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof.  *Id.*  A moving party with the burden of proof who seeks summary judgment faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).  The party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561.  "Accordingly, summary judgment in favor of the party with the burden of persuasion 'is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact.'"  *Green v. Tudor*, 685 F. Supp. 2d 678, 685 (W.D. Mich. 2010) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

Defendant argues that Plaintiff failed to exhaust his administrative remedies by failing to file a grievance about his allegation that GCDC provided him with Tylenol.  Defendant states that at all relevant times, GCDC had a grievance procedure and that Plaintiff was provided a copy of the Jail Handbook which includes the GCDC's Inmate Grievance Policy and Procedure. Defendant points out that Plaintiff filed five grievances while at GCDC, demonstrating that he knew how to file a grievance.  According to Defendant, only one grievance "even remotely discuss[ed] his allegation that GCDC provided him Tylenol," but it only requested the names of GCDC medical staff on duty at the time.  Defendant argues that it did not directly complain of the alleged incident, which occurred nine months earlier.  Defendant further argues that even if

3

any of the grievances related to the alleged incident, Plaintiff did not appeal GCDC's responses to the grievances even though the GCDC grievance policy required Plaintiff to submit an appeal in writing within five days upon receipt of GCDC's response.

Among the attachments to the summary-judgment motion is the affidavit of Defendant who avers in pertinent part that GCDC has a grievance procedure, a copy of which Plaintiff was given, as evidenced by Plaintiff's signature; that Plaintiff filed five grievances while at GCDC, none of which complained of the allegations in the complaint; and that Plaintiff did not appeal GCDC's responses to any of his grievances.  Also attached is the GCDC Jail Handbook and a form indicating that Plaintiff received the Jail Handbook.

Defendant also attached a grievance from Plaintiff dated January 13, 2019, in which Plaintiff stated as follows:

> I have sent a few request forms out asking what the names of the medical staff that was on duty and there positions the dates of 4-4-18 and 4-5-18 when I was sent to the hospital and treated for being given the wrong medication.  If you can get me the names of the medical staff those days and their positions as soon as possible I would appreciate it.

The response on that grievance form was as follows:  "First of all medical records do not support your allegation that you were given 'the wrong medication'.  Secondly, you are not entitled to staff records."

In his response to the summary-judgment motion (DN 26), Plaintiff states, in pertinent part, that when he was booked into GCDC by a woman known to him as Jennifer he told her that he only spoke Spanish.  He states that she filled in the question boxes on the intake form and that "when she gave him the jail handbook he told her he could not read English and she told him 'That's ok, just sign it anyway.'"

4

With regard to Defendant's argument that he did not appeal the denial of the grievance, Plaintiff argues that the grievance he filed in January 2019 concerned an emergency situation because it was in connection with a medical emergency and that under the grievance procedure a response to an emergency grievance is final; thus, he was not able to appeal it.

In reply (DN 27), Defendant asserts that Plaintiff's response was untimely.  Defendant further argues that Plaintiff's statements as to what happened at booking are unsworn and unsubstantiated.  Defendant states that GCDC provided a Spanish version of the Jail Handbook. Additionally, Defendant argues, that even if Plaintiff were not provided with a Spanish version of the Jail Handbook, he filed other grievances during his incarceration at GCDC.  Defendant also disputes Plaintiff's assertion that the January 2019 grievance related to an emergency situation.  Attached to the reply is another affidavit from Defendant who avers that when Plaintiff was booked into GCDC, he was provided a copy of the Jail Handbook in Spanish which included the Inmate Grievance Policy and Procedure in Spanish.  Attached as an exhibit to the affidavit is a title page from the GCDC Jail Handbook with Plaintiff's signature.

Plaintiff then filed a letter (DN 28), which appears to be a sur-reply.  He takes issue with Defendant's characterization of his response as being late; suggests that Defendant's reply was late; and states that he does "swear that any and all statements made in relation to this action are true."  He also states:  "Defendant only presented the Court with a shell of the 2 pages the Plaintiff was told to sign which contained nothing in it about the grievance procedure.  See attachment[.]"  Attached is the title page of the Spanish version of the Jail Handbook followed by what appears to be page 2 and page 15 of that Handbook.

First, the Court notes that it does not consider any of the filings at issue here to be late.

5

Turning to the issue of exhaustion, prisoner civil-rights cases are subject to the mandate of the Prison Litigation Reform Act (PLRA) that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  To exhaust a claim, a prisoner must proceed through all steps of a prison's or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).  The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), that failure to "properly" exhaust bars suit in federal court.  "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

A prisoner is required "to make affirmative efforts to comply with the administrative procedures," and the Court will analyze "whether those efforts to exhaust were sufficient under the circumstances." *Id*. at 90 (internal quotation marks and citations omitted).  "A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy." *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 n.2 (6th Cir. 2011) (citing cases).

The Court finds that Plaintiff failed to file a grievance regarding his allegation that he was given the wrong medicine.  The GCDC grievance procedure provides that "[a] grievance shall be made in the form of a written statement by the inmate *promptly* following the incident . . . ." *See* DN 24-3 (emphasis added).  The grievance policy also provides under the subtitle "Contents" that "[t]he grievance shall state fully the time, date, names of the deputies or other persons involved and pertinent details of the incident including the names of any witnesses." *Id*.

The grievance Plaintiff filed nine months after he was allegedly given the wrong medicine clearly concerns his attempt to determine staff names, not the alleged administration of the wrong drug.  It was not filed promptly after he was allegedly given the wrong medication; instead, it was filed months later.  Nor does it include content as outlined by the grievance policy, such as the pertinent details of the incident in which the wrong medication was administered.

Even if the grievance could be considered to be about the alleged wrongful administration of medicine, Defendant has demonstrated that Plaintiff did not appeal the denial of that grievance, which is required under the policy.  Plaintiff's argument that no appeal was necessary because it was an "Emergency Grievance" fails.  The GCDC "Emergency Grievance" procedure provides:  "Grievances related to conditions or conduct that could pose serious and *immediate danger* to the health and well-being of inmates/detainees shall be immediately related to the Jailer or Chief Deputy by the supervisor on the shift receiving the emergency grievance for consideration and resolution."  *Id.* (emphasis added).  The grievance filed months after Plaintiff allegedly received the wrong medication clearly does not meet the requirements to be considered an "Emergency Grievance."

Moreover, the Court finds that Plaintiff was cognizant of the grievance policy as evidenced by his having filed several grievances.  In any event, the Sixth Circuit has rejected the argument that the failure of a facility to explain the grievance policy or the PLRA excused the inmate's failure to exhaust.  *See Napier*, 636 F.3d at 221-22 n.2.

In *Jones v. Bock*, 549 U.S. 199, 216 (2007), the Supreme Court held that exhaustion under the PLRA is an affirmative defense.  Therefore, the heightened summary-judgment standard set out above applies to Defendant's motion for summary judgment based on the

affirmative defense that Plaintiff failed to exhaust.  The Court concludes that Defendant has met

his burden to show that Plaintiff did not fully exhaust his administrative remedies regarding his

claim.  The Court will, therefore, grant summary judgment to Defendant.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion for summary judgment (DN 24) is

**GRANTED**.

The Court will enter a separate Judgment dismissing this action.

Date:  January 7, 2021

Joseph H. McKinley Jr., Senior Judge

United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.009

8